John Wade WILKERSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–94–291 CR.

Court of Appeals of Texas,
Beaumont.

Submitted March 9, 1995.

Decided June 21, 1995.

Mike Laird, Beaumont, for appellant.

Tom Maness, Dist. Atty., Rodney D. Conerly, Asst. Dist. Atty., Beaumont, for state.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

WALKER, Chief Justice.

This is an appeal from a conviction for the felony offense of Delivery of a Controlled Substance. A jury found appellant guilty of the said offense. Thereafter, appellant pleaded "true" to habitual offender enhancement allegations and was sentenced by the jury to sixty-five (65) years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant raises one point of error for our consideration, *viz:* "The trial court erred when it denied appellant's motion to suppress Officer Nguyen's identification testimony." A somewhat detailed rendition of the facts surrounding the offense and arrest of appellant will aid in our disposition of the appeal. Said facts were revealed in testimony taken from a pretrial hearing on appellant's motion to suppress identification, and from trial testimony.

■ The State first called Officer Dan Nguyen of the Port Arthur Police Department to the stand. Officer Nguyen testified that at about 4:30 p.m. on June 29, 1993, he was working as an undercover agent for the narcotics division of the Port Arthur Police Department. The narcotics division was targeting an apartment complex in the city that was known for its drug trafficking. Officer Nguyen stated that he purchased a rock-like substance that was later confirmed to be cocaine for $40 from one of two black males who were present in the parking lot of the apartment complex. Nguyen testified that the black male that actually delivered the cocaine was taller than the other black male, was bald, and was wearing a black "muscle" shirt with the word "KOOL" imprinted on it, and the suspect had a large scar on his upper right chest. In court, Nguyen initially identified appellant as the black male that delivered the cocaine to him. However, also during direct examination, Nguyen was permitted to refresh his memory from his offense

report that it was not appellant with the large scar on his chest, but it was the shorter suspect who actually exhibited the scar.

The State then produced a photograph and showed it to Nguyen without any objection from appellant. Officer Nguyen recognized the person in the photograph as the appellant. Nguyen explained that following his purchase of the cocaine from appellant, he (Nguyen) left the apartment complex so that the narcotics detectives could move in and make the arrest. Said detectives had been aurally monitoring the events via a body microphone Nguyen had attached to his chest. Upon arresting appellant moments later, one of the arrest team photographed appellant. Said photograph was shown to Officer Nguyen approximately fifteen minutes later.

On cross-examination, it was established through Officer Nguyen that the other suspect eluded the arrest team and was never captured. The other suspect was also bald, and was also wearing a "muscle" shirt. Nguyen stated that total contact time with appellant was from ten to fifteen minutes "face to face." Nguyen was then questioned as follows:

Q.[Defense Counsel] And is part of your testimony of identifying the defendant based upon reviewing this photograph that you initialed back on that date?

A.[Officer Nguyen] Yes, sir.

Q. So, if you did not have this photograph, would you be able to identify the defendant independent of this photograph?

A. Maybe.

Q. Maybe?

A. Yes, sir.

Q. You're not sure, though?

A. No, sir.

Q. Thank you.

On redirect examination, the State elicited the following from Officer Nguyen:

Q.[The State] I think I asked you this question before; but are you able to identify this man seated here as the person who sold you cocaine on June 29th, 1993, based on your recollection of that person?

A.[Nguyen] Yes, sir.

Q. And is this the man,—

A. Yes, sir.

Q. —based on your recollection today?

A. Yes, sir.

Q. Okay.

Officer Nguyen's trial testimony concerning appellant's identification as the seller of the cocaine was somewhat more detailed and indicated the following:

Q.[State] This person you were talking to, did you eventually buy cocaine from him?

A.[Nguyen] Yes, sir, I did.

Q. Did other officers capture this man?

A. Yes, sir, they did.

Q. Was a photograph taken?

A. Yes, sir.

Q. Who showed you the photograph?

A. Detective A.B.

Q. Is that Alton Baise?

A. Yes, sir.

Q. Were you able to recognize the photograph of the picture—let me strike that. Was the picture in the photograph the same man that you bought the drugs from?

A. Yes, sir.

Q. Let me show you State's Exhibit No. 2. Have you seen this photograph before?

A. Yes, sir, I did.

Q. When did you see it before?

A. Right after—right after I made the buy from him and detectives move in and make an arrest on him, took the picture—took photograph of him and showed it to me for the purpose of identification.

Q. Okay. Is this man in this photograph the same man that you identified as selling drugs to you that day?

A. Yes, sir.

Q. Is he wearing the same thing that he was wearing when he sold drugs to you?

A. Yes, sir.

Q. Take a look at the defendant. Does this appear to be—does that man over there appear to be the same man that's in this photograph, State's Exhibit No. 1 (sic)?

A. Yes, sir.

[objections omitted].

Q. Would you point out the man in the courtroom that's in State's Exhibit No. 1 (sic).

The Court: Wait a minute. State's 1 was—

[The State]: State's Exhibit No. 2. I'm sorry.

The Court: Yeah.

A. The person seated over there, the defendant.

[Whereupon the witness identified the defendant]

Q. Okay. Did you eventually get word that one of the persons had been caught?

A. Yes, sir.

Q. Okay. Did you go meet Detective Baise at that time?

A. Detective Baise contacted me and radioed and said one was arrested and he's going to show me the photograph to make sure the person that I bought from—which later on he showed me the photographs that—

Q. And he showed you State's Exhibit No. 2, that photograph, right?

A. Yes, sir.

Q. When you saw that, was there any doubt in your mind that the person in that picture was the same person who sold you the crack cocaine?

A. There was no doubt.

Q. Okay. That wasn't the other person, was it?

A. No, it wasn't the other person.

Q. That was the defendant who sold you the crack cocaine in that picture, right?

A. Yes, sir, it was him.

Q. Did you ever see the defendant again that day?

A. No, sir, until—not until court.

Q. Okay. How many buys and people have you arrested and taken part in undercover buys since that time?

A. I think about 65 people.

Q. Okay. You can't tell the jury for sure that this man, just by looking at him today, is the same man who sold you the drugs; is that correct?

A. No, sir, not without a photograph. It's been over a year.

Q. Okay. But you knew at the time, that day, that the person in the photograph was the person who sold you the drugs?

A. Yes, sir. It was still fresh in my memory that day because he spent some time standing in front of my truck. That's when I called in his description three or four times.

On cross-examination before the jury, appellant's trial counsel attempted to discredit Officer Nguyen's identification testimony by the following line of questioning:

Q.[Defense Counsel] Let me show you what's been introduced as State's Exhibit No. 2. That is the photograph that you identified, is it not?

A.[Nguyen] Yes, sir.

Q. And in that photograph the gentleman is wearing the same kind of clothes that you described, isn't he?

A. Yes, sir.

Q. Would you have been able to identify him had he been wearing different clothes?

A. On that day I could.

Q. What was the description on the tape that you radioed to the police officers that day when you were driving off?

A. I called in and said he was wearing a black muscle shirt with a "Kool" word in front, black jeans; and he also had a Walkman on him.

Q. Where is the Walkman?

A. I don't know, sir. He might have took it off when he got inside the apartment just like he took his shirt off.

Q. And it's also the same person that today you cannot identify individually as being the person who sold you something out there?

A. If I don't have the photograph today, I couldn't remember him. It's been over a year.

Q. In that photograph—does it appear that in that photograph that the person in that photograph put that shirt on themselves?

A. No, sir.

Q. Who put the shirt on that individual?

A. I think it would be the detective or whoever arrested him.

Q. And you don't know where they got that shirt?

A. No. I wasn't there, sir.

Q. Was that photo placed in a photo line-up, a photo spread, with several other photographs; or was that the only photograph that was shown to you?

A. This was the only one that was shown to me.

The State next called Detective Danny Mathis of the Port Arthur Police Department to testify. Detective Mathis testified to his involvement in one of the surveillance backup teams during Officer Nguyen's undercover cocaine purchase from appellant. Mathis confirmed that the description of the suspect relayed to him from Officer Nguyen was that of a "black male, baldheaded, wearing a black shirt with the word "Kool" written across the front." Mathis stated that once the drug transaction had been completed and the identification information received he and the rest of the backup team moved into the area of the apartment complex looking for the described suspect. Mathis further stated that it was only a matter of seconds from the time Officer Nguyen provided the description to the time he (Detective Mathis) arrived at the scene of the transaction. Mathis testified that upon arriving in the apartment complex parking lot he observed a person matching the description of the seller of the cocaine. The suspect was in front of a group of apartments and Mathis observed him enter a breezeway and run up some stairs. Mathis further observed the suspect enter an apartment. Mathis then identified appellant as the person he observed running up the stairs and entering an apartment.

Mathis and others from the backup team followed to where the suspect entered the apartment. Mathis and the other detectives were permitted access to the apartment by a white male. It took approximately one and one-half to two minutes from the time the suspect entered the apartment before Mathis and the backup team were permitted to enter the apartment. Appellant was discovered in a bedroom under a bed. When discovered

under the bed, appellant had taken off the described "muscle" shirt but was carrying it in his hand.

The State's next witness was Detective Alton Baise of the Port Arthur Police Department. Detective Baise identified appellant as the person in custody of Detective Mathis when Baise arrived on the scene. Neither Mathis nor Baise had any knowledge as to how appellant came to have the "Kool" shirt placed on him after he was handcuffed, as was apparently the case from an examination of State's Exhibit 2. Baise testified that he photographed appellant, said photograph being State's Exhibit 2. Detective Baise further testified that the elapsed time from the taking of the photograph of appellant to showing the photograph to Officer Nguyen for a positive identification was about two to three minutes as Nguyen was only some two blocks away. Baise further testified as follows:

Q.[The State] Did you show him this picture [State's Exhibit 2]?

A.[Baise] Yes, sir.

Q. Did you ask him anything when you showed it to him?

A. I asked him was this the guy that sold him cocaine.

Q. What did he say?

A. He said, "Yes, that's him."

I said, "Are you absolutely sure?"

"Yes."

"Well, put your initials on the back of the photo; and I'll put mine and the date."

Q. His initials and your initials and the date are both on the back of the photo?

A. Yes.

Q. Did he tell you that this individual was the one out of the two who actually made the transaction with him?

A. Yes.

■ Appellant's sole complaint on appeal is that Nguyen's in-court identification was based on impermissibly suggestive pretrial identification procedures in violation of appellant's Due Process rights. While the use of a single photograph is suggestive, it does not necessarily render identification testimony inadmissible per se. *Herrera v.*

*State,* 682 S.W.2d 313, 318–319 (Tex.Crim. App.1984), *aff'd, Herrera v. Collins,* 506 U.S. ——, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). Even if it were conceded that State's Exhibit 2 was indeed impermissibly suggestive, the question still remains whether, under the totality of the circumstances, the in-court identification was so tainted "as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968). The appellant bears a heavy burden in this regard, as he must show by clear and convincing evidence that the witness's in-court identification was so tainted. *Madden v. State,* 799 S.W.2d 683, 695 (Tex.Crim.App.1990), *cert. denied,* 499 U.S. 954, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991). If the totality of the circumstances reveals no substantial likelihood of misidentification despite the suggestive identification procedure, then the identification testimony will be deemed reliable, and therefore admissible, as "reliability is the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154 (1977). To be weighed against the corrupting effect of any suggestive identification procedure in assessing reliability under the totality of the circumstances are the following nonexclusive factors: "The opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Id.* 432 U.S. at 114, 97 S.Ct. at 2253, 53 L.Ed.2d at 154.

In applying the five factors mentioned above to the facts of the instant case we first note that the record fails to indicate that either at trial or on appeal appellant contested the fact that State's Exhibit 2 was a photograph of himself. With regard to the opportunity to view factor, Officer Nguyen stated that he was in the presence of appellant for about ten to fifteen minutes. It was 4:30 p.m. in the afternoon and the photograph of appellant taken about an hour later indicates daylight conditions existed.

As for Nguyen's degree of attention, Officer Nguyen was a trained police officer on duty. Under similar circumstances, the Supreme Court in *Manson v. Brathwaite* opined:

> But it is also true that, as a specially trained, assigned, and experienced officer, he could be expected to pay scrupulous attention to detail, for he knew that subsequently he would have to find and arrest his vendor. In addition, he knew that his claimed observations would be subject later to close scrutiny and examination at any trial.

*Id.* at 115, 97 S.Ct. at 2253, 53 L.Ed.2d at 154.

As for the accuracy of Nguyen's description of the seller, Detective Mathis was on the scene seconds later and immediately spotted appellant based upon the clothing and physical description provided by Officer Nguyen. Timing is a significant factor here as it would appear from the testimony that Officer Nguyen had only momentarily lost visual contact with appellant before Detective Mathis made visual contact with appellant. This obviously lessened the chances that a mistake as to the identity of the seller of the cocaine would be made by the backup team.

As for Nguyen's level of certainty when confronted with the picture, his testimony at trial was that on the day in question he could have identified appellant no matter what appellant had been wearing in the picture. We again mention that the record is silent as to any dispute that the photograph is of appellant. Nguyen repeated his absolute assurance that appellant was the person who sold him the cocaine on the day in question.

Finally, the time between the crime and the presentation of the photograph to Nguyen for identification was testified to by Officer Nguyen as only about fifteen minutes. As was the case in *Manson v. Brathwaite,* we do not have here the passage of weeks or months between the crime and the viewing of the photograph. In fact, we do not have the passage of hours, but only fifteen minutes or so.

The above indicators of Officer Nguyen's ability to make an accurate identification are hardly outweighed by any corrupting effect of the challenged identification. Under the totality of the circumstances, including the significant testimony of Detectives Mathis and Baise, we cannot say that there is a very substantial likelihood of irreparable misidentification. As the Supreme Court concluded in *Manson v. Brathwaite:*

> Short of that point, such evidence is for the jury to weigh. We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.

*Id.* 432 U.S. at 116, 97 S.Ct. at 2254, 53 L.Ed.2d at 155.

For the above discussed reasons, we overrule appellant's single point of error and affirm the judgment and the sentence of the trial court.

AFFIRMED.